And I'm going to call the next case United States versus Caesar number 19-3961. And just thank you for joining us via zoom. We're happy to have you and glad we can do it this way. Sorry, we can't do it in person. We go by the regular rules 15 minutes aside. I'll do timing, I suggest that you do so as well. So you don't get surprised if we call you on the time. Now, Ms. Williams, you are the appellant's attorney, are you going to reserve any time for rebuttal? Yes, Your Honor, I would like to reserve three minutes for rebuttal, please. Okay, that'll be granted. So you'll have 12 for your principal argument. So you may proceed whenever you like. Thank you. Good morning, Your Honors. May it please the court. My name is Jennifer Williams, and I represent the United States, the appellant in this case. At issue in this appeal is whether 70,000 images of child pornography should be suppressed and a criminal prosecution dismissed. The district court below held that the child pornography should be suppressed for three reasons. First, on the ground that there was no probable cause supporting the search. Second, holding that the good faith exemption was inapplicable. And third, based on a finding that the follow-up search warrant was tainted. I am here asking this court to reverse on all three grounds. Starting with the probable cause determination, the district court focused very heavily on one inference that the affiant asked the magistrate to draw. And that was the store child pornography, tend to collect child pornography. The district court held based on the Zimmerman case that this inference was improper. And that because the inference was in the affidavit, the affidavit was not only not supported by probable cause, but there were no indicia of probable cause such that any reasonable law enforcement officer would have the search warrant was illegal. And therefore, the good faith exemption should not apply. How do you distinguish Zimmerman and John? Both of these cases required a link, an actual link. And in Zimmerman, the postal inspector statement didn't do it. In John, the investigator statement didn't do it. Here we have Galena's statement, but he recounts all his training and experience, none of which bear on his understanding of sexual abuse relating to video on a computer. How do you distinguish Zimmerman and John? John, I submit, is easier on her. The John case stood for the proposition that if a law enforcement officer wanted a judge to draw a link between child molestation and possession of child pornography, then the law enforcement officer had to state expressly in the affidavit that there is such a link. In our case, the trooper did state that there is such a link. I therefore believe that this affidavit is completely... I think it's a little more than that. Doesn't John call for some sort of support for that as opposed to just a recitation of the link? Well, yes, your honor. And in this case, the law enforcement officer did state his training and experience. And it was clear that he was a very experienced law enforcement officer, but he also made clear to the magistrate that his training was... At least the listed training was in other areas of the law. It was laid out for the magistrate. So how does his experience provide... How is that evidence of the link? It doesn't do it, does it? Well, because, your honor, he was a very experienced state trooper and had been a state trooper for a long time, the magistrate was... I'm sorry? Six years. And that was laid out in the affidavit honestly and truthfully. And the magistrate certainly was within their right to consider that in deciding whether the inference could be drawn. But I submit, your honors, that this inference is also a common sense inference. It is one that I submit anyone off the street would also draw, and the magistrate had the right to consider that as well. But in Zimmerman and John, I mean, Judge Barry's tone in Zimmerman kind of surprised me. It wasn't just a common sense. Common sense isn't enough. There has... I mean, probable cause requires there to be a belief of criminal activity afoot. Common sense doesn't do it. Well, and your honor, I submit that Zimmerman had very unique facts, and Zimmerman stands for the proposition that there was no probable cause under the facts of Zimmerman. But look at what the Zimmerman facts were, your honor. In Zimmerman, there was child molestation that happened outside of the home. The only tie to the home was one episode of streaming adult pornography that had happened 10 months later. In this case... But there was at least streaming. Here we had molestation. And what in the facts of this case makes you say, aha, there's images on a computer? I'm glad you asked, your honor, because there is a significant evidence leading to a probable cause determination in addition to the inference. First, there was recent and lengthy sexual abuse of two boys in the home, and that is critical, occurred in the home for two and a half years leading up to really the eve of the search warrant. There were efforts by the defendant to purchase used children's underwear on eBay under false pretenses. There were efforts to solicit photos and videos of children in their underwear, which shows, your honor, and I think this is critical, that this defendant was visually stimulated by children and seeking visual stimulation to feed his compulsion. Children in their underwear is not in and of itself child pornography. Is that correct? That is true. That is true, your honor. But there is nothing in the law that says a trooper has to see contraband in order to search for contraband. The trooper just had to be able to lay out probable cause to believe that contraband would be found, and in this case, he laid out probable cause showing that this defendant was seeking visual stimulation online with photos and videos of children in underwear, including pictures of the inside of the underwear, and that he made efforts to communicate directly with young boys under false pretenses, and that he was communicating with pedophiles about children's underwear, all of this happening while he was sexually abusing brothers in his home and keeping their soiled underwear as mementos. Considering his efforts to look online and seek visual stimulation to feed his compulsion and attraction to young children, that establishes probable cause. Could you address good faith and the court's determinations regarding good faith in Zimmerman and John? I find it curious that now Justice Alito descended in Zimmerman, and Justice Alito wrote the court's opinion in the Davis case, the same year actually that John came down. So what about good faith and the way we perceive good faith today, let's say? Certainly. Although the government is absolutely arguing that there was probable cause to support this warrant, a lot of the government's argument does come down to exists. This is a trooper who included the inference, the link between child molestation and collection of child pornography in his affidavit, as John says he must. He laid out probable cause, including connecting criminal activity in the home, which Zimmerman said he must, and he presented the affidavit to a neutral magistrate. He laid out his training and experience and put it all in there. And then it was up to the neutral and detached magistrate to cause. The case law in this area, Your Honors, I submit is really all over the place. We've got the Eighth Circuit saying that there's an intuitive connection. We've got the Second Circuit saying that although there wasn't probable cause in that case, there was certainly good faith. Well, the Eighth Circuit in Colbert is kind of an outlier, but that had to do with the fact that the saying he had movies, and the majority thought the movies were bad movies. The dissent actually thought that they were probably good movies that maybe the child would want to watch. But that provided the link there. So that's really a distinct case. Most of the other cases had a problem. I guess Justice Sotomayor found good faith in a case, but they had the link. But both Zimmerman and John, you would think that good faith would apply because one of them had the postal inspector saying this is what happens. Another had the investigator, the persons who commit offenses, and the orders were issued. And yet we found no good faith because it was so unreasonable. I don't know how we, how do we say today that good faith applies? First, Your Honor, I would say that Colbert is actually quite analogous. All the evidence indicated that the defendant was seeking to bring a girl to his home to show her movies, but there was no evidence about what kind of movies. That's another case where the agent didn't seek contraband, but there was indicia of contraband. It's actually quite analogous to our case. And I submit that this case is different from Zimmerman because in Zimmerman, there was no connection to the home or insufficient connection to the home. There was child molestation outside of the home. The only evidence linking anything to the home was a streaming of pornography. In the defendant's home? In the defendant's home. But there was resort to a computer and images, and here we don't really have that. But it wasn't, first of all, it was adult pornography, which there's no study out there that says adult pornography tends to be retained the way child pornography and child erotica tends to be retained by people because it is contraband and so difficult to obtain. But also, Your Honor, that was streamed, which is very different than what the defendant was doing in this case. This defendant was asking people, connections on eBay, to send him videos and images to him. That is very different from streaming something that you find online. I didn't say videos. I think it said photo. I could be wrong, Your Honor, and I would be happy to go back and check, but my recollection and my notes say that he was looking for photos and videos of children in the underwear and photos of the inside of the underwear. Send a picture of the inside. What do you do with the fact that the hard drive was found under the mattress during the search? That actually, I think, leads to the reason I believe the district court was wrong in saying the follow-up warrant was tainted. Imagine that the initial warrant didn't seek to search for child pornography, but was simply looking for evidence connecting the home to the two victims of the child molestation. So, the warrant was granted authorization to find children's underwear, children's bathing suits, photos of the victim's DNA, that sort of thing. The searching agents would absolutely have found the many, many electronic devices in the home and would have found the hard drive hidden under the mattress. That would inevitably have led to the trooper asking the defendant during the interview, why did you have a hard drive hidden under your mattress? What are all of these devices for? That would have led to the very same interview. And even if it hadn't, it would have led to a search of that hard drive and the devices. And 50,000 of the pornographic images were found on that hard drive, Your Honor. If we find that good faith would apply, then does the other warrant disappear as a problem? I mean, is it automatically okay? If good faith on the first warrant applies, well, but they searched the hard drives and found the pornography based on the second warrant. But if good faith applies on the first warrant, I would imagine good faith would apply. The second warrant was the DNA warrant. I mean, the third warrant. I'm calling it the follow-up warrant because it's- I meant the third warrant. Is it necessary to get another warrant to look at these, look at computers once you've seized them? I mean, there's some authority for the proposition that you don't need to get another warrant. It really depends on the circumstances, Your Honor. In this case, I believe it was not necessary, but the trooper was proceeding in the office. We often will request a follow-up warrant when there are devices seized and the agents want to search the device because there's no harm in being extra cautious and using belt and suspenders. In this case, I don't believe it was necessary because the original warrant did ask to search electronic devices. Going back to Judge Randall's question, if we agree with you on the good faith argument you've made on the first warrant, then the third warrant becomes academic, right? We don't need to do a separate analysis for that? That's correct. I'd like to ask you another question as well. You talked about a couple of out-of-circuit cases, and if we disagree with you on the probable cause argument you make, should we follow an analysis somewhat like the Tenth Circuit did in the Edwards case? Are you familiar with the Edwards case? I don't know that I am familiar with the Edwards case, Your Honor. All right, then I'm not going to press you on it. But I would submit that this case is calling out for a good faith exemption. There is nothing that would indicate to a law enforcement officer that this warrant was unlawful because it laid out not only the inference the agent wanted the magistrate to draw, but all of the evidence supporting the indications that criminal activity happened in the home and that this defendant was seeking online photos of children in their underwear to feed his sexually attracted young children, and that he was seeking visual stimulation. And one final point, if I may, before I step aside, there is a low threshold for a magistrate when deciding if there's probable cause. It's whether there's a fair probability that evidence would be found. And in addition to that, when it's being reviewed, the magistrate's decision is to be given great deference. I submit that we have launched over the low threshold, and when you consider the fact that the magistrate's decision should be given great deference, the search warrant should be permitted to stand. But because we give great deference or because it's a low threshold, then shouldn't the officers be very vigilant to make sure that all the necessary ingredients are there supporting probable cause? That is what we want from our law enforcement officers, and I believe that is what the trooper did in this case. But ultimately, the reason we have magistrates in this kind of scenario, as opposed to troopers just deciding on their own when to search, is so that there would be a neutral, detached third party looking at what the trooper believed established probable cause to make that determination as the magistrate. Did the good faith analysis under Zimmerman and John, did it run afoul of Leon or were those rulings in line with Leon? Honestly, Your Honor, I submit that Zimmerman and John are true outliers, that they are very unique cases. I hesitate to say they run afoul of Leon, but they are very limited to their very unique facts. They do not stand for the broad proposition that the district court held they stood for in this case. It should be clarified that they apply to their narrow, narrow facts, and that cases that have different facts should be considered on their merits. Yeah, I have one question. As in Zimmerman, is there a staleness issue here with Trooper Galena relying on the report that was six months old or so? I submit no, Your Honor. There are a few important differences from Zimmerman. In Zimmerman, it was adult pornography that had been streamed 10 months earlier. As I mentioned earlier, there is no law out there that says adult pornography tends to be held. Child pornography and child erotica does tend to be held by its collectors because it is contraband and so difficult to obtain. In addition, Your Honor, in this case, there were photos that this defendant was trying to have sent to him, not streaming, but actually sent to him, which is very different and which, again, makes it clear that he was intending to hold it and that as digital evidence, it would not be stale because it would still be on his digital devices. Thank you. Thank you. Judge Rendell, do you have anything more? No, I'm good. Thank you. Okay. Thank you, counsel. We'll hear from you. And we'll hear from Mr. Robbins now. Mr. Robbins? Good morning. Good morning. I'm not sure why my video isn't working. I apologize. May it please the court, David Robbins on behalf of Mr. Caesar. I've listened to this and my colleague, Ms. Williams, correctly points out that these are all unique cases, every one of them, and this one stands on its own facts. Judge Pappert authored an excellent opinion, which covered all of the issues quite comprehensively. I'm sorry, I'm having a little problem here. He assessed the record and rendered a justified and justifiable decision on the decisions, on the issues presented here today. But the focus rests upon today, the focus rests upon the prosecution's argument, especially those rates in the reply brief. How is the deterrent value of the good faith, the whole deterrent value, how is it served by suppression here? I mean, we have an officer, Galena, who put in this lengthy affidavit recounting all of these things, and the magistrate judge approved it. Why should we slap his wrists, basically, when he put all this forth and probably had a good faith belief that, you know, where there's smoke, there's fire, that probably child pornography was there. Well, he's making a deductive inference that's not based upon anything specific set forth in the four corners of the affidavit. He has not specified anything, any kind of study, anything that says that there is a direct connection between those who are engaged in child abuse activities. But is this a gross disregard or gross negligence? Judge Packard said it was. Well, Justice Alito in Davis, although it's not a warrant case, really talked about the good faith rule that the simple isolated negligence, the deterrent value of suppression is diminished, and the exclusion cannot pay its way. Said we really need to conduct a cost-benefit analysis in applying the good faith exception. I'm just having trouble. And here the cost is extraordinarily high when Trooper Galina is engaged in an effort that seems to be unbridled in the way he approaches this case. When you look at the affidavit of probable cause, it contains references to what other people are saying, which are clearly calculated to inflame and enrage a reviewing authority. I mean, there's a reference to what someone else said, and it's unclear whether it's attributable to Mr. Caesar or to someone else when you read that. This is the reference to, I think you know what I'm referring to, and I won't authorize this. Yes, absolutely. I thought that was a little bit beyond the pale also, because we don't know who this is, and the language needs to go to. He goes well beyond that, Your Honor. He's specifically engaged in an approach on this, which just defies explanation in terms of reasonableness of the way he wanted to get Mr. Caesar. But isn't the fact that Mr. Caesar is on eBay looking for this and wants a photo and does engage with these people, doesn't that lead you to believe, he's on eBay, he's on his device, he's done this in his home to these young people. Doesn't it stand to reason that there's probably going to be something there on the computer? No. And maybe it's that today we know more and we have more instances than we had in Zimmerman in 2002 and in John in 2011. The first iPhone wasn't invented until 2007. All this computer age has just expanded. Maybe now we think it's more just common sense inference than they did back then. Well, in any case, we can look back and see what was revealed and justify it. But that isn't the way we're supposed to review these cases. We're supposed to review these cases on the basis of whether or not there was probable cause set forth within the four corners of the affidavit. In this particular case, Trooper Galina did not specify in any specific way that there is a direct connection between child abuse and child pornography. He did not cite any studies. He did not provide any basis in his extensive representations concerning his experiences that would justify him making that kind of claim. Well, in fairness, you started off by saying all these cases have different facts. And of course, that's true. Now, we're talking, of course, about the eBay evidence here. And that may suggest that a defendant has a sexual interest in media depicting children. There's nothing like that in Zimmerman or John, though. So isn't that enough to distinguish those cases from this particular case, at least on the issue of good faith? I don't believe so. I submit that in this particular case, there's an awful lot of excessive information that has nothing to do with child pornography. Even the charge itself that was being pursued at the time the affidavits were created said nothing about child pornography. It was specifically related to assessing the charge of sexual assault of minors. But he wants a photo of children in their underwear. Doesn't that lead you to believe he's searching eBay and wants a picture of children in their underwear? Where are you going to find that picture? They're not going to put an envelope and mail it to him. It's going to be on the computer. And as you correctly pointed out previously, children in their underwear is not the same as child pornography. You're making a leap of logic that we're all supposed not to make when we're engaged in this kind of legal analysis. But how about molesting these children and what he did to them in his bed? Do you think this is all, it says, oh, well, obviously, he just wanted children in their underwear because he has stock in Carter's or something. I mean, you've got to be realistic. Well, realistic is not the same as generalizing, which is what is going on here. Trooper Galina versus states also talks about applying common sense. So. Well, common sense doesn't necessarily mean that you can establish that connection either. Common sense says that certain things happen. But in any given case, how do you know that that's specifically applicable here? The fact that you don't know, but probable cause doesn't require you to know. Requires belief and common sense can can support a belief, can it not? That's true. But in this case, assault on a minor is by its nature a one on one personal crime. We're talking about child pornography, which is a possessory offense. And making that probable cause inference, because one who sexually assaults minors is necessarily engaged in possessing pornography is not the same thing. Inductive reasoning suffers in an objective infirmity where you lack in the affidavit of probable cause specific actual training or knowledge to support the inference that's being made. The danger in deploying that inference allows attribution of cause and effect without demonstrating a real basis. Well, he did have the last part of his training. I'm sorry. It seems to me there is a real basis here, and it's been described by my colleagues. And then it's a question of drawing an inference that is reasonable. I mean, the sexual abuse of two brothers in his bed and all of the activity on the Internet seem to me to be sufficient here. Activity on the Internet is ubiquitous today. Everybody is on the Internet for all kinds of reasons. It doesn't necessarily mean that they are collecting child pornography. And to make that assumption is just woefully incorrect. There's a lack of particularity in this affidavit with respect to this specific issue. There's nothing in the four corners of the affidavit that makes a direct connection or even a sufficient inferential connection, which is the basis upon which Judge Pappert decided this case. Could you focus on good faith? It seems like a lot of your arguments have been focused on probable cause. Perhaps he could focus on good faith. I was scratching my head just a little bit. It seems like the district court didn't really deal too much with John and Zimmerman insofar as the good faith issue goes. Is that a problem? I don't believe so. I think that Judge Pappert did address the issue directly. I believe that he found that given what was obviously lacking in Judge Pappert's opinion in the affidavit of probable cause is the basis upon which he was finding that his actions were well outside the scope of what he should be doing in submitting an affidavit of probable cause. He did not identify with particularity, with specificity, sufficient facts to even approach the magistrate with the affidavit. He found that he was grossly negligent in that regard. That was a specific factual finding that Judge Pappert made, and I think that's justified by the record. Over and above that, we take a look at what Trooper Galena did in this case, we go back to the same thing. His overreach was extensive. He included things in the affidavit that were inappropriate. He made assumptions and took inferences that were not permissible. He did not provide specific information regarding the continuing nature of this offense. He did not tie specific facts to the affidavit, but used very broad, sweeping generalizations to support his allegations. And then in the third affidavit, he used the additional information that he leveraged from securing the electronic communication devices as a way to continue to interview, despite Mr. Caesar's specific request that they stop the interview. And he leveraged that to coerce him into making more statements that specifically related to the content of and the possession of child pornography. Counselor, you were, you know, in your briefs as well, we're highly critical of Trooper Galena, but is it an objective test that we apply for the good faith analysis? It is an objective test, but one of the points of analysis is the actions of the officer are also subject to review. And in this case, that's a significant portion of why it is that Judge Pappert was very concerned with Trooper Galena's lack of vigilance and attentiveness to the Fourth Amendment rights of Mr. Caesar. And he specifically noted that. And while the government said that Trooper Galena was being proper and zealous in his approach, Judge Pappert found exactly the opposite. And he was justified in that when you've reviewed the record carefully. Uh, can you tell us what the status of the state court charges are against your client? Yes, I'm glad you brought that up, Your Honor. Presently, Mr. Caesar has been convicted of sexual assault of a minor in Chester County. That case is pending sentencing. The Butler County case seems to be on hold. We don't really have a lot of information on that other than it is presently pending. I do note that in conclusion, police work, particularly with respect to the search warrant applications or fact-based statements, and they must offer the requisite protections for the individual's liberty interests. Prosecutions protecting paramedics to the contrary, promotes permissiveness that undermines our precious constitutional safeguards. And I would hope that the court would honor those constitutional safeguards and affirm Judge Pappert's opinion and decision. Thank you. Judge Sirica, do you have anything more? Okay, thank you. Judge Rendell? Nothing more. Thank you. Okay, thank you. We'll hear from Ms. Williams. Thank you. I would like to use my rebuttal time to address the claim that this trooper was out to get the defendant. I submit that whether or not he was, and it's our position that of course he was not, he was being very professional, but that it's entirely irrelevant. In order to accept the theory that the trooper's questioning of the defendant after he invoked his right to remain silent somehow destroys the good faith exemption in this case, you would have to be comfortable with the fact that this questioning happened after the search warrant was signed, after the search was executed, and find that retroactively it prevented the good faith exception from applying. And as you said, Judge Shigaris, correctly, it's an objective standard. The analysis looks at whether a reasonably well-trained law enforcement officer would find that the search warrant was unlawful. There is nothing in the record indicating that objectively a reasonably well-trained law enforcement officer would have any issue with executing the search warrant as it was written. Why would he include in his affidavit comments made by someone else to him that are lewd, to say the least, and would make you want to look further, might independently if they were his statements, but they weren't his statements. It was something that someone said to him, and when you read it, you're not really sure what it is. I mean, that was gratuitous. Your Honor, I submit it was not gratuitous because it showed the tone of the conversations. As Your Honor said, it made clear that the defendant was not seeking pictures of children in underwear because he had an interest in the brand of underwear. He was seeking pictures of children in underwear in order to satisfy his sexual interest in children. That's why the full statements were by the defendant, but made it clear that it was an exchange. Finally, Your Honors, I would just like to bring you back again to the standard of review, which I think is key in this case. In deciding probable cause, there is a low threshold for a magistrate, and on appeal, great deference is given to the magistrate's decision. In addition, as the court said in conversations with my opponent, it really is a bit of a balancing when you look at the good faith exemption. The analysis looks at whether similar conduct by law enforcement officers would be deterred in the future, and in this case, I submit suppression does not result in any deterrence, very similarly to Judge Fuentes' dissent in John. At worst, this was a mistake by a law enforcement officer, and similar mistakes would not be deterred through suppression. The law enforcement officer had a belief that he established probable cause. The magistrate agreed with him. It was, at worst, a mistake. Let me turn off my three-minute alarm, Your Honor. But on the flip side, the harm to the judicial system would be great if these 70,000 images were suppressed and the prosecution dismissed. So for all of these reasons, I ask the court to reverse the decision of the district court. May I ask you, since you're speaking of the standard of review, what standard do we apply to Judge Pappard's finding of gross negligence for purposes of the good faith exception analysis? Well, there's plenary review to application of the law to the facts, so I would submit there's a standard of review for the judge's finding as well. Okay. Judge Sirica, do you have anything more you'd like to ask? Judge Sirica? No. Okay, thank you. Judge Rendell, do you have anything more? I do not, thank you. Okay, thank you. All right, I don't either, so I want to thank counsel on behalf of the panel for their excellent oral argument today, as well as their excellent briefs. We'll take the case under advisement. We thank counsel again for participating in this Zoom argument. We wish we could see you personally, but of course circumstances don't allow that. But we wish you and your families well, and we'd ask the clerk to adjourn court for the day.